United States District Court
Southern District of Texas
**ENTERED**
July 14, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAXMI DEVI SARWAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-16-00247 |
| | § | |
| DAVID SHULKIN, Secretary, | § | |
| U.S. Department of Veterans Affairs, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Laxmi Devi Sarwal alleges that her former employer, the United States Veterans Affairs Medical Center, discriminated against her on the basis of her race (Asian Indian), her gender (female), her age (70), her color, and her Hindu religion, and in retaliation for her complaints. The Department of Veterans Affairs has moved to dismiss some of Sarwal's claims for failure to exhaust administrative remedies and has moved for summary judgment on her remaining claims. (Docket Entry Nos. 26, 27). Sarwal has not responded to either motion. Based on a careful review of the pleadings, motions, the record, and the relevant law, the court grants the VA's motions to dismiss and for summary judgment. (Docket Entry No. 26, 27). An order of dismissal is separately entered. The reasons for the rulings are set out below.

**I.  Background**

Sarwal has worked as a staff assistant for the VA at the VA Medical Center in Houston, Texas since January 1996. (Docket Entry No. 25, Ex. 2 at 4). In February 2011, Sarwal filed a formal complaint with the VA's Office of Resolution Management. (*Id.*, Ex. 1 at 264). She alleged race, gender, age, and religious discrimination after she was denied a pay increase and received a performance rating of "fully successful" rather than "exceptional." (*Id.* at 265). (The VA uses

performance ratings of "exceptional," "fully successful," and "unacceptable.") (*Id.* at 220). In May 2014, the EEOC Administrative Law Judge granted the VA's motion for summary judgment on all the claims, and the Office of Employment Discrimination Complaint and Adjudication affirmed the ruling. (*Id.* at 258–71).

In January 2013, Sarwal filed another formal complaint. (*Id.* at 587). She alleged that she was discriminated against because of her age and retaliated against for her complaints when she received a performance rating of "excellent" instead of "outstanding." (*Id.* at 588). (The VA performance ratings on this form were "unacceptable," "minimally satisfactory," "fully sucessful," "excellent," and "outstanding.") (*Id.* at 254). In May 2014, the EEOC Administrative Law Judge granted the VA's motion for summary judgment on these claims, and the Office of Employment Discrimination Complaint and Adjudication affirmed. (*Id.* at 581– 96).

In December 2013, Sarwal filed another complaint. She had received a rating of "fully successful" rather than "outstanding" for her communication skills and performance. (Docket Entry No. 25, Ex. 1 at 1–8). She alleged this action was caused by discrimination on the basis of her race, gender, age, and national origin, and was in retaliation for her prior complaints. In June 2014, Sarwal filed another complaint alleging discrimination on the basis of race, gender, age, national origin, and color, and retaliation for her prior complaints. This complaint was based on the VA's downgrading her position from a GS-9 to a GS-5, lowering her performance ratings, removing some of her job duties, reprimanding and suspending her, and other behavior. (*Id.*). The Office of Employment Discrimination Complaint and Adjudication found that as a matter of law Sarwal had not shown discrimination, retaliation, or a hostile work environment. (*Id.* at 30). A notice of final agency action dismissing her complaint was issued on November 2, 2015. (*Id.* at 1–32).

Sarwal filed this suit against the VA in January 2016. (Docket Entry No. 1). She reurged all the discrimination and retaliation complaints made in her EEOC and other agency filings,

asserting claims under Title VII and the ADEA. She also alleged that she was subjected to a hostile work environment, in violation of Title VII and the ADEA. The VA moves to dismiss some of the claims for lack of subject-matter jurisdiction and moves for summary judgment on the remaining claims. (Docket Entry Nos. 26, 27). Sarwal has not responded to either motion. The parties' arguments and the record evidence are analyzed under the applicable legal standards.

## II.     The Legal Standards

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed, for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Masidon*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark*, 798 F.2d at 741. When a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to allow affidavits or other documents and to hold a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). The

3

court may consider matters outside the pleadings to resolve factual challenges to subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment. *See Garcia*, 104 F.3d at 1261.

### B. Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United*

4

*States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

**III. Analysis**

    **A. The Rule 12(b)(1) Motion to Dismiss**

The VA moves to dismiss Sarwal's claims arising from the events she alleged in her February 2011 and January 2013 administrative complaints. The VA contends that this court lacks subject-matter jurisdiction because Sarwal did not appeal the dismissals to the EEOC and because she filed suit too late.

"There are two requirements for filing a Title VII action in federal court: 1) the complaint must be filed within the time allotted by Title VII, and 2) the complainant must first have exhausted her administrative remedies." *Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990). "There is disagreement in this circuit on whether a Title–VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that

5

implicates subject matter jurisdiction."[1] *Ruiz v. Brennan*, 851 F.3d 464, 472 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006)). In *Ruiz*, the Fifth Circuit considered whether the judge erred dismissing the plaintiff's claims under Rule 12(b)(6) for failure to exhaust. *Id.* Because neither party argued waiver or estoppel, and "because the outcome would remain the same whether [the court] consider[ed] exhaustion to be a condition precedent or a jurisdictional prerequisite," the court did not need to "take sides in this dispute." *Id.* The Fifth Circuit has affirmed dismissals under both Rules 12(b)(1) and 12(b)(6) when a plaintiff has failed to exhaust administrative remedies and does not argue waiver or estoppel as a defense to dismissal. *Id.* (affirming dismissal under Rule 12(b)(6)); *Pacheco*, 448 F.3d at 792 (affirming dismissal under Rule 12(b)(1)). Sarwal has not asserted waiver or estoppel, and the outcome would remain the same whether the court considered exhaustion to be a condition precedent or a jurisdictional prerequisite. The court need not wade into, much less pick a side in, this intra-circuit dispute.

A federal employee who receives a notice of final agency action may appeal to the EEOC within 30 days after receiving the notice, or she may file suit in federal district court within 90 days after receiving the notice or within 180 days after filing an appeal to the EEOC if it has not issued a final decision. 42 U.S.C. § 2000e–16(c); 29 C.F.R. §§ 1614.402, 1614.407. Sarwal did not appeal to the EEOC or file suit within the required period.

---

[1] The Fifth Circuit in *Pacheco* explained the intra-circuit split. "Neither the Supreme Court nor this court sitting *en banc* has ruled that the exhaustion requirement is subject to waiver or estoppel, and our panels are in disagreement over that question." *Pacheco*, 448 F.3d at 788 n.7; *compare Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990) ("[I]t is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction.") *and Porter v. Adams*, 639 F.2d 273, 276 (5th Cir. 1981) ("The exhaustion requirement . . . is an absolute prerequisite to suit") *and Randel v. Dep't. of U.S. Navy*, 157 F.3d 392, 395 (5th Cir. 1998) ("If the claimant fails to comply with either of these [Title VII] requirements then the court is deprived of jurisdiction over the case.") *with Young v. City of Houston*, Tex., 906 F.2d 177, 180 (5th Cir. 1990) ("A failure of the EEOC prerequisite does not rob a court of jurisdiction.") *and Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 449 (5th Cir. 1983) ("The basic two statutory requirements (although these are not necessarily 'jurisdictional') for a Title VII suit are . . . .").

A final agency decision was issued on May 30, 2014 dismissing Sarwal's 2011 and 2013 administrative complaints. (Docket Entry No. 25, Ex. 1 at 258, 581). The notice of final agency action notified Sarwal that she could file a civil action: 1) within 90 days, if she did not appeal to the EEOC; 2) if she appealed, within 90 days after receiving the EEOC's final decision; or 3) 180 days after filing the appeal to the EEOC, if no final decision had issued. (*Id.* at 260, 583). Sarwal did not appeal to the EEOC, and she did not file this suit until January 28, 2016. That was more than a year and a half after the notice of final agency action issued. Her failure to file suit within the deadline deprives this court of subject-matter jurisdiction over her claims based on the 2011 and 2013 agency actions. *See Pacheco*, 448 F.3d at 792 ; 42 U.S.C. § 2000e–16(c). The VA's motion to dismiss the claims arising from its actions that were the basis of the 2011 and 2013 administrative complaints is granted.[2] (Docket Entry No. 27).

    **B.**    **The Summary Judgment Motion**

        **1.**    **The *McDonnell-Douglas* Burden-Shifting Standard**

Employment discrimination in violation of Title VII can be proved by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Evidence is direct if it would prove the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted). If no direct evidence exists, the court uses the familiar burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to determine whether summary judgment is appropriate. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). The legal standard is well settled:

---

[2] Alternatively, Sarwal's claims could be dismissed under Rule 12(b)(6) for failure to exhaust her administrative remedies. *See Ruiz,* 851 F.3d at 472.

7

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a *prima facie* case of discrimination. If the plaintiff presents a *prima facie* case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Davis*, 383 F.3d at 317 (citations omitted).

The elements of a *prima facie* showing of discrimination are that the plaintiff: (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, was treated more harshly than others who were similarly situated. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

The defendant's burden of articulating a legitimate nondiscriminatory reason for its adverse employment action is a burden of production, not persuasion. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (5th Cir. 1993). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 507 (internal citations and quotation marks omitted). The defendant must produce "admissible evidence, . . . which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 507.

If the employer meets its burden, the *prima facie* case dissolves and the burden shifts back to the plaintiff to raise a fact dispute material to determining either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Vaughn*, 665 F.3d at 636 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("On

8

summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."). "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford*, 190 F.3d at 404.

When evaluating pretext, the focus is on the employer's motivation for the adverse employment action, not whether the employer acted wisely or based its decision on an accurate understanding of the facts. Title VII does not require objectively fair or well-reasoned business decisions. It does prohibit employers from making business decisions on a prohibited basis, including race discrimination or retaliation for protected conduct. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). It is not enough for a plaintiff to show a material factual dispute as to whether the company's decision to take an adverse employment action against her was good business, or to show that the employer was wrong about the underlying facts. The question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true and warranted the action. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).

### 2. Discrimination

The VA concedes that Sarwal has made a *prima facie* showing of two of the four elements of discrimination. She is a member of a protected class, and she had the minimum qualifications for her position. The VA argues that Sarwal has not shown that she suffered an adverse employment action, and even if she had, she cannot show that a similarly situated employee was treated more favorably than she was.

Sarwal alleged that she suffered an adverse employment action in October 2013 and April 2014 when she received "fully successful" performance ratings instead of "outstanding" or

"exceptional." (Docket Entry No. 1 at ¶¶ 17, 23). Sarwal retained her classification as a GS-9 staff assistant, duties, and compensation, with the corresponding benefits. The uncontroverted summary judgment evidence shows no negative effect on her pay. Because she does not point to facts showing that the evaluation reduced or otherwise affected her job duties, compensation, or benefits, it is not an adverse employment action. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503–504 (5th Cir. 2014). Nor has Sarwal pointed to similarly situated comparators who were treated more favorably than she was. Sarwal has not met her burden to make a *prima facie* showing of discrimination.

Sarwal also alleged that she was suspended for three days in September 2014 and that this was an adverse employment action. Suspension with pay, followed by reinstatement and no loss of benefits, is as a matter of law not an adverse employment action. *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 589 (S.D. Tex. 2015) (citing *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331–32 (5th Cir. 2009)). Suspension without pay may be an adverse employment action. *Hypolite v. City of Houston, Tex.*, 493 F. App'x 597, 606 (5th Cir. 2012) (temporary suspension without pay was an adverse employment action, but the court did not distinguish between discrimination and retaliation claims); *Brown v. Prentiss Reg'l Hosp.*, No. 2:11-CV-180-KS-MTP, 2013 WL 610520, at *5 (S.D. Miss. Feb. 19, 2013) (suspension without pay qualifies as an adverse employment action in the Title VII discrimination context). The VA has not presented evidence clarifying whether the suspension was with or without pay.

Assuming that the three-day suspension is an adverse employment action, Sarwal still has not made a *prima facie* showing that similarly situated individuals were treated more favorably than she was. And even assuming that Sarwal had made a *prima facie* showing, the VA has presented legitimate nondiscriminatory reasons for the suspension. The record shows that Sarwal had claimed that a supervisor threatened to stab her in the neck with a pencil. (Docket Entry No. 25, Ex. 1 at

1054). After a thorough internal factfinding investigation and a police investigation, Sarwal's claims were determined to be false. (*Id.*). She was charged with conduct unbecoming a federal employee for the fabrication and suspended. (*Id.*). The record does not contain evidence supporting an inference that the VA's proffered explanation was a pretext for discrimination or that discrimination was a motivating factor in her suspension. Summary judgment on this claim is warranted.

Sarwal also alleges that the "downgrade" of her position was discriminatory. The uncontroverted record evidence shows that in November 2014, Sarwal's job description had to be updated to reflect her current duties. (*Id.* at 20). Sarwal's supervisor, together with Sarwal and her union representative, updated her job description. (*Id.*). Sarwal's position was reclassified from a GS-9 staff assistant to a GS-5 medical clerk. (*Id.* at 20, 795–96, 1201–20). But a moratorium meant that the downgrading never occurred. (*Id.* at 1027). Sarwal is still classified as a GS-9 employee. (*Id.*). Nor has Sarwal pointed to any similarly situated individuals who were treated differently than she was. Even if she had, the government has provided a legitimate nondiscriminatory reason for the change in Sarwal's employment status. Changes in Sarwal's job duties since she was hired in 1996 made her job description outdated.[3] (*Id.* at 1060). The job description was examined and revised to reflect the job duties she was currently performing. The record evidence does not support an inference or give rise to a factual dispute material to deciding whether the VA's proffered reason was a pretext for discrimination or that discrimination was a motivating factor in the revised job description and change to the grade.

Sarwal alleged that the removal of her timekeeper duties in December 2013, her reprimand in December 2013, and her placement on sick-leave certification in November 2014, which required

---

[3] There is also record evidence to suggest that Sarwal initiated the reclassification process, not her supervisor. (Docket Entry No. 25, Ex. 1 at 1060).

11

her to provide medical documentation to use sick leave, were caused by discrimination. (Docket Entry No. 1 at ¶¶ 20–21, 36). The VA provided legitimate nondiscriminatory reasons for each action. The VA presented evidence that it removed Sarwal's timekeeper duties because she engaged in misconduct by entering and certifying her own time. (Docket Entry No. 25, Ex. 1 at 20, 1093). Sarwal was issued a formal reprimand for her continuing failure to follow the chain of command, despite repeated warnings from multiple supervisors. (*Id.* at 18, 1052–54). The VA presented evidence that it placed Sarwal on sick-leave certification because she was taking "excessive sick leave." (*Id.* at 1022). The record contains no evidence that the VA's proffered reasons were pretextual or that discrimination was a motivating factor. And Sarwal has not identified or presented record evidence that similarly situated individuals were treated differently than she was.

The VA's summary judgment motion on Sarwal's discrimination claims is granted. (Docket Entry No. 26).

### 3. Retaliation

#### a. The Legal Standard

Title VII prohibits retaliation when an employee "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §2000e-3. The elements of a *prima facie* showing of retaliation are that: (1) the plaintiff engaged in an activity protected by Title VII; (2) an adverse action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Zamora v. City Of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).

In *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013), the Supreme Court held that a Title VII retaliation claim requires the plaintiff to show that the protected activity was a but-for cause of the employer's adverse action. There is some disagreement among the circuits as to whether this requires a plaintiff to show but-for causation as part of her *prima facie* case of

12

retaliation, or to show but-for causation only at the third step of the *McDonnell-Douglas* framework to rebut the proffered legitimate nonretaliatory reason for the adverse employment action. *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30, 33 n.4 (5th Cir. 2016) (citing *Young v. City of Phila. Police Dep't*, 651 F. App'x. 90, 97 & n.12 (3d Cir. June 3, 2016) ("Applying the 'but-for' standard at the prima facie stage would effectively eliminate the need to use the *McDonnell-Douglas* burden shifting framework because plaintiffs who can prove 'but-for' causation at the prima facie stage would essentially 'be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis.'" (citations omitted)); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250–51 (4th Cir. 2015) (noting circuit split as to whether *Nassar* applies to the causation prong of the *prima facie* case of retaliation)). The Fifth Circuit has twice declined to decide which way to resolve this circuit split. *Id.*; *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 419 n.6 (5th Cir. 2016). This court need not do so because Sarwal's retaliation claim fails whether she is required to show but-for causation at the *prima facie* stage or at step three of the *McDonnell-Douglas* framework. *See Smith*, 656 F. App'x at 33 n.4 (even assuming the plaintiff was not required to show but-for causation until the third step of the *McDonnell-Douglas* framework—the "most favorable" standard to the plaintiff—she could not meet her burden); *see also Montgomery-Smith v. Louisiana Dep't of Health & Hosps.*, No. CV 15-6369, 2017 WL 2256801, at *5 (E.D. La. May 22, 2017).

### b. Analysis

Sarwal's retaliation claims fail for the same lack of evidence as her discrimination claims. Sarwal relies on the same alleged adverse actions as the basis for her retaliation claims. Even assuming that these were adverse employment actions, the record evidence does not support the required causal connection between the actions and her protected activity. And after the VA

13

provided legitimate nondiscriminatory reasons for each employment action, Sarwal did not point to record evidence showing that those reasons were a pretext for discrimination.

The VA's summary judgment motion on Sarwal's retaliation claims is granted. (Docket Entry No. 26).

### 4. Hostile Work Environment

#### a. The Legal Standard

To prevail on a hostile work environment claim under Title VII, a plaintiff must prove that she: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on the protected factor; (4) the harassment affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). To determine whether conduct is severe or pervasive, courts look to the totality of the circumstances. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez*, 670 F.3d at 651 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Discourtesy, rudeness, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal citations and quotations omitted). A hostile work environment is one in which the abuse is continuous, not simply episodic. *Id.* at 787 n.1. A bare allegation of harassment, or one unrelated to membership in any protected class cannot form the basis of a Title VII claim. *Carr v. Sanderson Farms, Inc.*, 665 F. App'x 335, 339 (5th Cir. 2016).

### b. Analysis

Sarwal did not respond to the summary judgment motion and neither submitted nor pointed to evidence of the underlying conduct she alleges, nor shown its relationship to her protected status. *Mitchell v. Wackenhut Corr.*, 224 F.3d 765 (5th Cir. 2000) ("The nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence."). Even if this court were to accept as true all of Sarwal's allegations, which it is not required to do at the summary judgment stage, she has not made a *prima facie* showing of a hostile work environment.

Sarwal alleged that Linda Harper, a supervisor, "waived her hands back and forth in a threatening manner" and told Sarwal to "get out of her face." (Docket Entry No. 1 at ¶ 13). Harper also allegedly threatened to charge Sarwal as being absent without leave despite approval from another supervisor to leave the office for a medical emergency. (*Id.* at ¶ 15). A different supervisor, Dr. Nicholas Masozera, allegedly threatened Sarwal with written counseling when she "reported fraudulent activity," of an unspecified nature. (*Id.* at ¶ 19). Sarwal alleged, again without specificity, that two other supervisors, Ila Flannigan and Nytasha Wolford, "made racist remarks" and "threatened to physically assault" Sarwal. (*Id.* at ¶ 22). Another new supervisor, Curtis Bergeron, allegedly "excessively monitor[ed]" Sarwal's absences from her desk, threatened to

15

charge her with being absent without leave when she left a meeting to go to the restroom, and told her that "he did not fear anything." (*Id.* at ¶¶ 25–27).

Sarwal also alleged that one of her supervisors, Wolford, pointed a sharp pencil close to Sarwal's neck and threatened to poke the pencil into her neck so that she would "bleed to death." (*Id.* at ¶ 22). The VA has presented competent record evidence showing that Sarwal complained of this incident and filed a police report. An internal factfinding investigation found no evidence of any verbal or physical threats and concluded that Sarwal had fabricated the incident. (Docket Entry No. 25, Ex. 1 at 1054–55, 1057). Sarwal was charged with "conduct unbecoming a federal employee" and suspended for three days for her lies, for wasting facility resource, and for potentially harming Wolford. (*Id.*). Sarwal has neither identified nor submitted record evidence creating a factual dispute or supporting an inference of a hostile work environment.

Nor has Sarwal alleged or pointed to record evidence showing that these alleged actions were based on her race, gender, religion, color, national origin, or age. A wide range of behaviors can make a workplace uncivil, but Sarwal must point to record evidence showing that they were based on a protected factor. *See Carr,* 665 F. App'x at 339 (a bare allegation of harassment, unrelated to membership in any protected class, cannot form the basis of a hostile work environment claim); *Hernandez*, 670 F.3d at 652.

Only one allegation is seemingly tied to Sarwal's Indian heritage. Sarwal alleges that she was required to attend a continuing education course entitled "Communicating Successfully in the American Workplace." (Docket Entry No. 1 at ¶ 32). Sarwal alleges that her supervisor, Bergeron, "insinuat[ed]" that her "accent was not American," leading her to believe this is why she was required to take this course. (*Id.*). The VA has presented competent record evidence that Bergeron gave Sarwal this assignment because he believed that she needed to improve in communicating as a team member and to achieve better workplace harmony. (Docket Entry No. 25, Ex. 1 at 1020–21).

16

Bergeron testified that Sarwal was disruptive in her communications to other employees, was condescending to supervisory staff, and "issu[ed] directives and actions on how to do things" that were outside her job duties. (*Id.* at 1020). Sarwal would also open doors and walk in while patients were with physicians. (*Id.*). Bergeron spoke to Sarwal before assigning her to take the course about "being more tactful, courteous and asking instead of demanding" in talking to staff. (*Id.*). Bergeron "look[ed] for a way that [supervisors] could turn this all around and discover a new way to communicate with staff." (*Id.*). Other staff members besides Sarwal had to take the class. (*Id.*). The competent summary judgment evidence refutes Sarwal's allegations that she was singled out to take the course because of her race, national origin, or other protected trait. The competent record evidence shows that she, along with others, was assigned the course because of problems communicating in the workplace. Sarwal's subjective belief that she was discriminated against does not defeat summary judgment. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (refusing to rely on a plaintiff's subjective belief of discriminatory intent).

In addition, except for the alleged threat to stab her in the neck—which the uncontroverted summary judgment evidence shows was proven to be a fabrication—the threats Sarwal alleges do not rise to the level courts have found sufficient to show that the conduct affected a term, condition, or privilege of employment to overcome summary judgment. *See Baker v. FedEx Ground Package Sys., Inc.*, 278 F. App'x. 322, 329 (5th Cir. 2008) (supervisor's comments to African–American employee that "she did not want to work with people like" the employee and that "whites rule" were not sufficiently severe to survive summary judgment on a race-based hostile work environment claim); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir. 2007) (a supervisor's infrequent and isolated comments to the plaintiff about "ghetto children" and other racially insensitive remarks did not create a factual dispute as to whether there was severe or pervasive harassment); *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005) (a supervisor's one

two-hour "harangue" and use of a mocking tone on one occasion, and another supervisor's comment comparing the plaintiff to a "needy old girlfriend," did not amount to a severe or pervasive working environment); *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003) (occasional racial comments were insufficient for a hostile work environment claim). The threat alleged, proven to be false by a factfinding investigation, is by itself insufficient to support an inference of a race-based hostile work environment.

The VA's summary judgment motion on the hostile work environment claim is granted. (Docket Entry No. 26).

**IV.     Conclusion**

The VA's summary judgment motion and its motion to dismiss are granted. (Docket Entry Nos. 26, 27). This case is dismissed by separate order.

SIGNED on July 14, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge